**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA SIMMONS | ) | CASE NO. |
| 112 E. Grant St. | ) | |
| Piqua, OH 45356 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| MPW INDUSTRIAL SERVICES INC. | ) | |
| 9711 Lancaster Road SE, | ) | **JURY DEMAND ENDORSED** |
| Hebron, OH 43025 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| MPW Industrial Services Inc. | ) | |
| c/o Catherine Jopling (Stat. Agent) | ) | |
| 9711 Lancaster Rd. | ) | |
| Hebron, OH 43025 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JOEY MILLER | ) | |
| c/o MPW Industrial Services Inc. | ) | |
| 9711 Lancaster Road SE, | ) | |
| Hebron, OH 43025 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Jessica Simmons, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

## PARTIES

1. Simmons is a resident of the city of Piqua, Miami County, state of Ohio.

2. Defendant MPW INDUSTRIAL SERVICES INC. ("MPW"), is a domestic company that

   conducts business throughout Ohio.

3. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred at MPW's location at 9711 Lancaster Road SE, Hebron, OH 43025.

4. At all times referenced herein, MPW was Simmons' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e and Ohio R.C. §4112.01(A)(2).

5. Upon information and belief, Defendant JOEY MILLER is a resident of the state of Ohio.

6. Defendant Miller is and/or was an employee of MPW.

7. Defendant Miller did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of MPW and/or within the scope of his employment at MPW.

8. At all times referenced herein, Defendant Miller supervised and/or controlled Simmons' employment at MPW.

9. At all times referenced herein, Defendant Miller was Simmons' employer within the meaning of Title VII and R.C. 4112.01(A)(2).

## JURISDICTION & VENUE

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Simmons is alleging a federal law claim under Title VII.

11. This Court has supplemental jurisdiction over Simmons' state law claims pursuant to 28 U.S.C. § 1367, as Simmons' state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13. Within 180 days of the conduct alleged below, Simmons filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 532-2019-00641) against MPW ("EEOC Charge").

14. On or about September 30, 2019, the EEOC issued and mailed a Dismissal and Notice of Rights letter to Simmons regarding the EEOC Charge.

15. Simmons received her Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

16. Simmons has filed this Complaint on or before the 90-day deadline set forth in her Dismissal and Notice of Rights.

17. Simmons has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

18. Simmons is a former employee of MPW.

19. At all times noted herein, Simmons was qualified for and could fully perform the essential functions of her job.

20. Simmons, as a female/woman, is in a protected class for her sex/gender.

21. Simmons worked for MPW, ending as a janitorial/paint shop supervisor, from September 12, 2017, until MPW indefinitely suspended Simmons' employment on or about May 7, 2018.

22. Defendants' indefinite suspension of Simmons was functionally equivalent to a termination as she was never allowed to return to work.

23. The cited reason for Simmons' suspension was that she expressed that she was dissatisfied with MPW's investigation into her complaints of sexual harassment against Miller.

24. The early portion of Simmons' employment was generally positive.

25. Simmons reported one supervisor for sexual harassment of another employee, but that supervisor saw no discipline as a result.

26. Things changed for Simmons, however, in or around February 2018.

27. After that time, Simmons' manager, Defendant Miller, began sexually harassing her at work.

28. The harassment started at a corporate seminar where Simmons and Miller were staying at a hotel separate from the other employees.

29. Miller went out of his way to tell Simmons that he and his wife were swingers and attempted to get Simmons to have sex with him.

30. Simmons rode back to the hotel with Miller from a team dinner (as he did not drink).

31. After when Simmons went to the hot tub, Miller texted Simmons asking if she was currently taking selfies (in her bathing suit).

32. Simmons said no and Miller responded with a text full of ghost-emojis indicating his disappointment in her response.

33. The following day, Simmons told Miller that she was dating another employee and said that he (the other employee) was with her at that point.

34. Simmons said this as Miller's previous interactions had made her uncomfortable.

35. When Simmons returned to her room, Miller continued texting her anyway.

36. At one point, Simmons mentioned that she was on a diet, to which Miller responded, "turn around, you don't have to go on a diet, that's what guys like," referring to the shape of her buttocks.

37. Later, at a quarterly meeting and breakfast on a Saturday, Miller mentioned that Simmons looked like she had been "up all night," and asked her if her "boy toy" had kept her up, meaning that he wanted to know if she had had sex the previous night.

38. Miller, at another point on third shift, asked if he could speak with Simmons in private.

39. Miller asked about a rumor that Simmons had gone upstairs to have sex.

40. Simmons denied the rumor, calling it ridiculous, and Miller said that guys liked to brag.

41. About one week after the seminar, Simmons was with Todd (LNU, supervisor at MPW's South Carolina plant) for a manager's event.

42. After some drinking with all the managers (except Miller, who again does not drink alcohol), Miller made a comment about Simmons' body again.

43. Though Simmons cannot recall exactly what Miller said, the implication was that Todd (LNU) was thirsty for Simmons' body like someone is thirsty for Jaeger Bombs (a type of alcoholic drink).

44. Todd (LNU) made no sexually harassing comments to Simmons, and the only interaction the two had was at the seminar.

45. Miller later told Simmons, while back at MPW, that he had a message from Todd (LNU) to Simmons, "Todd [(LNU)] says he wants some more of that and he's not talking about the Jaeger."

46. Miller then asked to take a picture of Simmons for Todd (LNU) claiming Todd (LNU) had requested one, which she refused.

47. About one week later in the cafeteria, Simmons caught Miller taking her picture anyway; when she confronted him about it, he said he was taking the picture for Todd (LNU).

48. Also after the seminar, Simmons filed a written complaint with MPW's HR department about the harassment, on or about April 26, 2018.

49. Shortly after the complaint, Miller mentioned to Scott Maynard (supervisor on third shift with Simmons) that he was unsure if Simmons could handle the stress of her job, despite consistent glowing performance evaluations previously, significant performance raises she had received for her excellent work, and Miller himself saying she "was the future of MPW." An investigation followed that complaint.

50. Jacob McCullough (HR supervisor) met with Simmons about her report.

51. McCullough seemed to be on Simmons' side in the meeting; she mentioned that she was afraid to return to work because of the sexual harassment and that she had already needed to take a few sick days as a result.

52. McCullough said he would not tell Miller, but that HR would investigate.

53. Immediately after that interaction, Miller seemed to know of the report and harassed Simmons further.

54. Simmons was a third-shift supervisor, where Miller was on first; despite this, he showed up during her shift and harassed her anyway.

55. On or about the Friday before her indefinite suspension, Simmons spoke with Stephanie Coe by phone, MPW's in-house counsel, about the sexual harassment.

56. Later, Miller met with HR about the report, but he received no discipline, upon information and belief.

57. Displeased, as MPW has a "zero-tolerance" policy on sexual harassment (and the toleration was clearly more than zero for Miller), Simmons posted on her social media that there was no suspension.

58. Simmons did not mention MPW by name, but still was indefinitely suspended as a result of the post.

59. Notably, Simmons is not the only supervisor who had reported Miller for his sexual harassment of Simmons.

60. Two other supervisors also reported the conduct, along with other issues they had had with Miller.

61. Further Keith Shoemaker informed Simmons an unknown person had called his wife's personal phone.

62. Shoemaker evidently thinks that Miller was the one to call his wife; no one outside of administration or supervisory roles had the ability to find her number.

63. The caller apparently told Shoemaker's wife that he was involved in a sexual harassment scandal at MPW at the first leadership seminar, which is the likely same incident Simmons had reported to MPW and for which she was indefinitely suspended.

64. Simmons' indefinite suspension was effectively a termination.

65. Simmons' termination was an adverse employment action by Defendants.

66. Simmons was discriminated against due to her opposition to her supervisor's (Miller's) sexual advances.

67. Simmons was retaliated against for making complaints of discrimination and sexual harassment in the workplace.

68. Simmons was actually terminated for refusing Miller's sexual advances, and/or in retaliation for making complaints of discrimination and sexual harassment in the workplace.

69. There was a causal connection between Simmons' protected class (sex/gender) and complaints and Defendants' adverse actions taken against Simmons.

70. Defendants' purported reason for Simmons' termination is pretext for sex/gender discrimination, and/or retaliation for making complaints of discrimination and sexual harassment in the workplace.

71. As a result of Defendants' acts and omissions, Simmons has suffered severe emotional distress, anxiety, and depression. She has had and continues to accrue damages based thereupon.

## COUNT I: SEXUAL HARASSMENT

72. Simmons restates each and every paragraph of this Complaint as though it were fully restated herein.

73. Simmons was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances from her supervisor, Miller.

74. Defendants created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

75. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Simmons reported the sexual harassment to her supervisor and HR both verbally and in writing.

76. Defendants' actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. §4112.02(A) and Title VII.

77. Miller's sexual harassment of Simmons occurred while Miller was acting in the course and scope of his employment at MPW.

78. Simmons' supervisor (Miller) sexually harassed Simmons. MPW had knowledge of this harassment and failed to take any corrective or remedial action.

79. As a direct and proximate result of Defendants' conduct, Simmons has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT II: QUID PRO QUO SEXUAL HARASSMENT

80. Simmons restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. As a female, Simmons is a member of a protected class under R.C. § 4112.02 and Title VII.

82. During her employment, Simmons was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors by her supervisor, Miller.

83. The harassment against Simmons was based on her gender.

84. Simmons' submission to the unwelcome sexual advances by Miller was an express or implied condition for receiving job benefits and/or continued employment.

85. Simmons repeatedly rejected Miller's acts of sexual harassment.

86. Defendants knew or should have known about Miller's sexual advances towards Simmons.

87. Defendants failed to remedy Miller's misconduct or stop him from continued acts of sexual harassment against Simmons.

88. As a direct and proximate result of Defendants' conduct, Simmons has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX/GENDER DISCRIMINATION AND SEXUAL HARASSMENT

89.  Simmons restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

90. During her employment with MPW, Simmons was subjected to offensive and harassing conduct by Miller based on her sex/gender, as well as sexual harassment from Miller.

91. Defendants knew or should have known of the harassing conduct against Simmons by Miller.

92. Defendants condoned, tolerated and ratified this harassing conduct.

93. This harassing conduct was severe and/or pervasive.

94. This harassing conduct was offensive to Simmons.

95. This harassing conduct interfered with Simmons' ability to perform her job duties.

96. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Simmons.

97. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Simmons.

98. As a direct and proximate result of Defendants' conduct, Simmons suffered and will continue to suffer damages.

## COUNT IV: SEX/GENDER DISCRIMINATION IN VIOLATION OF TITLE VII (Defendant MPW Only)

99. Simmons restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100.        Simmons is a member of a statutorily protected class based on her sex/gender under Title VII.

101.    Defendants terminated Simmons' employment citing her response to the investigatory findings.

102.    Defendants' purported reason for Simmons' termination is pretextual.

103.    Defendants actually terminated Simmons' employment based on her sex/gender.

104.    Defendants violated Title VII when they terminated Simmons' employment based on her sex/gender.

105.    As a direct and proximate result of Defendants' conduct, Simmons has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

106.    Defendant treated Simmons differently than other similarly situated employees based on her sex/gender.

107.    Defendant discriminated against Simmons on the basis of her sex/gender throughout her employment with the company.

108.    Defendant's discrimination against Simmons based on her sex/gender violates Title VII.

109.    As a direct and proximate result of Defendant's conduct, Simmons suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: SEX/GENDER DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.

110.    Simmons restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111.    Simmons is a member of a statutorily protected class based on her sex/gender under R.C. § 4112 et seq.

112.     Defendants treated Simmons differently than other similarly situated employees based on her sex/gender.

113.     Defendants terminated Simmons' employment citing her response to investigatory findings.

114.     Defendants' purported reason for Simmons' termination is pretextual.

115.     Defendants actually terminated Simmons' employment based on her sex/gender.

116.     Defendants violated R.C. § 4112.01 et seq. when they terminated Simmons' employment based on her sex/gender.

117.     As a direct and proximate result of Defendants' conduct, Simmons has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

118.     Defendants discriminated against Simmons on the basis of her sex/gender throughout her employment with the company.

119.     Defendants' discrimination against Simmons based on her sex/gender violates R.C. § 4112 et seq.

120.     As a direct and proximate result of Defendants' conduct, Simmons suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI:  RETALIATION

121.     Simmons restates each and every prior paragraph of this complaint, as if it were fully restated herein.

122.     As a result of the Defendants' discriminatory conduct described above, Simmons complained of the discrimination, sexual harassment, and disparate treatment she was experiencing.

123.     Subsequent to Simmons' complaints to MPW, Defendants took adverse employment actions against Simmons, including terminating her employment.

124.     Defendants' actions were retaliatory in nature based on Simmons' opposition to the unlawful discriminatory conduct and sexual harassment.

125.     Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

126.     As a direct and proximate result of Defendants' retaliatory discrimination against and discharge of Simmons, she has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### <u>COUNT VII: UNLAWFUL AIDING, ABETTING,<br>AND INCITING OF DISCRIMINATION</u><br><u>(Defendant Miller Only)</u>

127.     Simmons restates each and every prior paragraph of this complaint, as if it were fully restated herein.

128.     Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

129.     Miller aided, abetted, incited, coerced, and/or compelled Midtown's discriminatory termination of Plaintiff.

130.     Miller aided, abetted, incited, coerced, and/or compelled Midtown's

discriminatory treatment of Simmons.

131.     Miller violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting

discrimination against Simmons.

132.     As a direct and proximate result of Defendant's conduct, Simmons has suffered

and will continue to suffer damages, including economic, emotional distress and physical

sickness damages.

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

133.     Simmons restates each and every prior paragraph of this Complaint, as if it were

fully restated herein.

134.     As set forth above, Defendants targeted, harassed, bullied, embarrassed, and

ultimately discharged Simmons based on her disabilities and/or in retaliation for

complaining about sexual harassment to MPW.

135.     Defendants intended to cause Simmons emotional distress, or knew that its acts or

omissions would result in serious emotional distress to Simmons.

136.     Defendants' conduct was so extreme and outrageous as to go beyond all possible

bounds of decency and was such that it can be considered as utterly intolerable in a civilized

community.

137.     As a direct and proximate result of Defendants' acts and omissions as set forth

above, Simmons has suffered mental anguish of such a serious nature that no reasonable

person could be expected to endure it.

138.    As a direct and proximate result of Defendants' conduct and the resulting emotional

distress, Simmons has suffered and will continue to suffer damages, including economic,

emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Simmons demands from Defendants the following:

a) Issue a permanent injunction:

   i.    Requiring MPW to abolish discrimination, harassment, and retaliation;

   ii.   Requiring allocation of significant funding and trained staff to implement all
         changes within two years;

   iii.  Requiring removal or demotion of all supervisors who have engaged in
         discrimination, harassment, or retaliation, and failed to meet their legal
         responsibility to promptly investigate complaints and/or take effective action to
         stop and deter prohibited personnel practices against employees;

   iv.   Creating a process for the prompt investigation of discrimination, harassment,
         or retaliation complaints; and

   v.    Requiring mandatory and effective training for all employees and supervisors
         on discrimination, harassment, and retaliation issues, investigations, and
         appropriate corrective actions;

b) An award against Defendants for compensatory and monetary damages to compensate
   Simmons for physical injury, physical sickness, lost wages, emotional distress, and
   other consequential damages, in an amount in excess of $25,000 per claim to be proven
   at trial;

c) An award of punitive damages against Defendants in an amount in excess of $25,000;

15

d) An award of reasonable attorneys' fees and non-taxable costs for Simmons' claims as allowable under law;

e) An award of the taxable costs of this action; and

f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

＿＿/s/ Matthew Bruce＿＿＿＿＿＿
Matthew G. Bruce (0083769)
  Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM, LLC**
8354 Princeton-Glendale Rd., Ste. 203,
West Chester, Ohio 45069
Phone: (216) 291-4744 x173
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

Attorneys for Plaintiff Jessica Simmons

## **JURY DEMAND**

Plaintiff Jessica Simmons demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)